AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Middle District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| Jose Miguel Sanchez, Hector Esneider Cadavid, Junior Valbuena, and Alfonzo Gomez | ) Case No. 8:24-mj-1951-NHA |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **May 31, 2024**, in the county of **Hillsborough** in the **Middle** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 46 U.S.C. §§ 70503(a) and 70506(a) and (b). | Conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, while aboard a vessel subject to the jurisdiction of the United States. |
| | Possession with intent to distribute five kilograms or more of a mixture of a substance containing a detectable amount of cocaine, while aboard a vessel subject to the jurisdiction of the United States. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jennifer R. Jackson, Special Agent, DEA
Printed name and title

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 6/10/2024

_____
Judge's signature

City and state: Tampa, FL

Natalie Hirt Adams, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jennifer Jackson, being duly sworn, depose and state:

1. I submit this affidavit in support of a criminal complaint charging that beginning on an unknown date and continuing through on or about May 31, 2024, while on board a vessel subject to the jurisdiction of the United States, the defendants, JOSE MIGUEL SANCHEZ, HECTOR ESNEIDER CADAVID, JUNIOR VALBUENA, and ALFONSO GOMEZ, knowingly and willfully combined, conspired, and agreed with each other and with other persons, to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii).

### Introduction and Agent Background

2. I am a Special Agent with the Drug Enforcement Administration ("DEA") and currently work at the Tampa District Office. I have worked as a law enforcement officer for approximately 23 years. During my career, I have conducted criminal investigations involving domestic and international drug trafficking organizations. I have worked with other federal, state, and local agencies in conducting these investigations. I have conducted numerous investigations involving the manufacturing and sale of methamphetamine, cocaine, and the diversion of scheduled pharmaceutical drugs.

3. Since October 2020, I have worked as a Special Agent on the Operation Panama Express Strike Force. Operation Panama Express is a federal Organized Crime Drug Enforcement Task Force ("OCDETF") investigation conducted by the Federal Bureau of Investigation ("FBI"), the DEA, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), the Coast Guard Investigative Service ("CGIS"), the United States Coast Guard ("USCG"), and state and local law enforcement agencies. Investigations initiated by Operation Panama Express are prosecuted in the Middle District of Florida (Tampa Division). Special Agents assigned to Operation Panama Express currently investigate cocaine and marijuana smuggling organizations that are responsible for the transportation of cocaine and marijuana through international waters of the Caribbean Sea and Eastern Pacific Ocean via maritime vessels to transshipment locations for later distribution in the United States.

4. The averments contained in this Affidavit are based on my personal knowledge and reliable information related to me by other law enforcement officers with whom I have worked on this investigation. Because of the limited purpose of this Affidavit, I have not included each and every fact known to me or other law enforcement agents concerning this investigation. I have included only those facts I believe are necessary to establish probable cause supporting the requested complaint.

### Probable Cause

5. The United States Coast Guard ("USCG") has authority under 14 U.S.C. § 89 to make inquiries, examinations, inspections, searches, seizures, and

arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce United States law.

6. On or about May 31, 2024, while on routine patrol, a maritime patrol aircraft (MPA) detected a go-fast vessel (GFV) operating approximately 32 nautical miles east of San Juan de Los Cayos, Venezuela in international waters. The vessel had four people on board and four outboard engines. The MPA also saw several packages and gasoline barrels on the vessel's deck. After learning about the GFV, a United States Coast Guard (USCG) law enforcement detachment team (LEDET) aboard the HNLMS GRONINGEN, a Royal Netherlands Navy ship, diverted to intercept the vessel.

7. The USCG law enforcement detachment team launched from the GRONINGEN in two small boats to intercept the GFV. A USCG Helicopter Interdiction Tactical Squadron (HITRON) accompanied the two small boats. The GRONINGEN received a Statement of No Objection (SNO) and Use of Force (UOF) authorization for a Right of Visit (ROV) boarding. It also received permission to use up to and including warning shots and disabling fire on a non-compliant GFV reasonably suspected of drug smuggling in international waters. The HITRON deployed warning shots and disabling fire on the GFV, which eventually made the GFV inoperable. Members of the USCG LEDET intercepted the GFV, which was the only non-government vessel in the area.

8. The boarding team of the small boats conducted a right of approach. One of the crewmembers, ALFONSO GOMEZ, fell and hit his head on the edge of

3

the vessel. The Coast Guard evacuated GOMEZ by air to Curacao for transportation to the nearest capable hospital. None of the remaining individuals on the GFV made a claim of nationality for the vessel or claimed to be the master of the vessel. The boarding team found no physical flag flown, no registration documents, no name, no registration number, and no homeport on the GFV. Therefore, the Coast Guard treated the GFV was one without nationality and subject to the laws of the United States. The USCG boarding team conducted a full law enforcement boarding.

9. Once onboard the GFV, the USCG boarding team found the remaining three defendants: JOSE MIGUEL SANCHEZ, HECTOR ESNEIDER CADAVID, and JUNIOR VALBUENA. The boarding team saw several packages jettisoned near the GFV and seven packages on the GFV. The Coast Guard recovered the jettisoned packages. The boarding team conducted two Narcotics Identification Kit ("NIK") tests on a recovered package. Those tests returned a positive result for cocaine. The boarding team recovered a total of 84 packages. These 84 packages had an at-sea weight of approximately three thousand and twenty-four (3,024) kilograms. The boarding team conducted IONSCAN swipes of each crewmember's hands with negative results.

10. In my training and experience, the GFV is consistent in style, size, and propulsion to other such vessels frequently used to transport cocaine across international waters in the Caribbean Sea.

4

11. The GRONINGEN sank the GFV as a navigation hazard and detained JOSE MIGUEL SANCHEZ, HECTOR ESNEIDER CADAVID, and JUNIOR VALBUENA.

### Conclusion

12. Based upon the foregoing information, I respectfully submit that probable cause exists to believe that JOSE MIGUEL SANCHEZ, HECTOR ESNEIDER CADAVID, JUNIOR VALBUENA, and ALFONSO GOMEZ knowingly and willfully combined, conspired, and agreed with each other and with other persons to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii).

Jennifer R. Jackson
Special Agent, DEA

Affidavit submitted to me by reliable electronic means and attest to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 4(d) before me this __10th__ day of June 2024.

NATALIE HIRT ADAMS
United States Magistrate Judge

5